IN THE UNITED STATES COURT OF FEDERAL CLAIMS
SPECIAL MASTER DIVISION

STEPHANIE VINO FIGUEROA, as
personal representative of
the estate of MANNY FIGUEROA,
deceased,

          Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

          Respondent.
_____/

No. 10-750V

Special Master Christian Moran

**ECF**

### PETITIONER'S RESPONSE IN OPPOSITION
### TO RESPONDENT'S MOTION TO DISMISS

Petitioner, STEPHANIE VINO FIGUEROA ("Stephanie"), files her Response to the Respondent's Motion to Dismiss, and states:

**BACKGROUND AND PROCEDURAL HISTORY**

MANNY FIGUEROA ("Manny"), husband of Stephanie, received a flu vaccine in October of 2008. Shortly thereafter, and as a result of the vaccine, Manny was diagnosed with the Miller Fisher variant of Guillain-Barre Syndrome ("GBS"). He suffered from various neurological manifestations of GBS, and his ability to work was affected.

Manny's condition worsened over the course of 2009. Sadly, in February of 2010, he was diagnosed with pancreatic cancer; he passed away two months later. In the interim, medical records and necessary expert opinions were being obtained. Stephanie filed this claim in November of 2010, seeking compensation for Manny's estate for his vaccine-related injury under the National Childhood Vaccine Act, 42 U.S.C. §§300aa-10 *et seq.* ("the Act").

Respondent moves to dismiss, taking the position that this Court lacks jurisdiction over this claim because the Act does not allow recovery for persons who suffer a vaccine related injury but

die of non-vaccine related causes prior to the filing of a petition. Petitioner suggests that such a strained reading of the statute is both illogical and contrary to the intent of the Act.

## DISCUSSION AND CITATIONS OF AUTHORITY

### I. The Purpose of the Act:

The original Act was passed in 1986 to reduce litigation by creating a "no-fault" system for recovery in vaccine injury cases. The Report accompanying the original Act (*H. Rept. No. 99–908*, 99th Cong., 2d Sess., Sept. 26, 1986) makes clear that the Congress intended a quick, flexible, and streamlined system. That Report called for a compensation procedure that administered awards "quickly, easily, and with certainty and generosity." The system was intended to be "fair, simple, and easy to administer" and to compensate persons with recognized vaccine injuries with a minimum of red tape. Congress intended then, as it does now, that the vaccine injury compensation system be "informal, flexible, and expeditious," *see H.R. Conf. Rept. No. 101-386*, 101st Cong., Session 1, Nov. 21, 1989. And, indeed, with each new case comes a more expansive and flexible (and therefore by definition less technical and rigid) interpretation of the Act in favor of inclusion.

### II. Persons Who May Petition:

42 U.S.C. §300aa-11(b)(1)(A) sets forth the description of who may bring a petition:

(A) Except as provided in subparagraph (B), any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table may, if the person meets the requirements of subsection (c)(1) of this section, file a petition for compensation under the Program.

Stephanie fits into a gray area under this statute. It is undisputed that Manny suffered a vaccine related injury – however, he unfortunately died, from non-vaccine related causes, while

preparation was ongoing to file his Petition, and it was filed by Stephanie, who was duly appointed as representative of his estate.

### III. Manny's Claim Survives his Death and the Petition is Properly Brought:

Survival of personal injury actions has long been recognized in most states under the law, including in Florida, where Manny lived and died. In Florida, where an injured person dies from causes unrelated to the injury, the injury claim does survive. Section 46.021, Fla. St. In such cases, the personal representative of the estate is substituted in, and stands in the shoes of the decedent, with all the same rights and liabilities thereof. *See* Rule 1.260, Fla. R. Civ. P.; *Salfi v. Columbia/JFK Medical Center L.P.*, 942 So. 2d 417 (Fla. 4th DCA 2006).

The Vaccine Act is remedial in nature. Congress clearly intended for victims of vaccine injuries to be compensated in a fair, expeditious, flexible and generous manner. As a matter of law, if Manny had died after the petition was filed of unrelated causes, there is no question that his injury claim would survive upon substitution of Stephanie as his personal representative. *Zatuchni v. HHS*, 516 F.3d 1312 (Fed. Cir. 2008). Nonetheless, Respondent here argues that because Manny himself did not file the injury petition (having died), despite its timely filing, Stephanie lacks standing to file on his behalf.

Caselaw is sparse in this regard, with no cases squarely on point. However, it seems clear that ultimately, if called upon to do so, the appellate court will find in Manny's favor. A review of related cases demonstrates that the trend in Vaccine Act cases, as stated above, is to give the Act the broadest, most flexible reading possible, in accordance with its remedial purpose. At least one Special Master – Special Master Vowell – in this forum has analyzed this matter in depth and

concluded that claims like Manny's are in fact intended to survive, as discussed below; similarly, Chief Special Master Golkiewicz, this year, has also commented on the gradually expanding reading of the standing rules (although, in fairness, in a case prior to that opinion, Special Master Moran concluded the opposite).

The issue is simple – whether vaccine injury claims survive the death of the petitioner. The Federal Circuit has already answered this question in the affirmative as to claims that are already pending at the time of death. The question thus becomes whether such claims survive when the claimant dies pre-petition, and dies of causes unrelated to the vaccine. Simple logic dictates that the answer must also be "yes."

Any discussion of this issue necessarily begins with *Zatuchni v. HHS*, 516 F. 3d 1312 (Fed. Cir. 2008). In that case, Snyder received an MMR vaccination in February of 1992. She developed symptoms of illness, and in January of 1994, she filed a vaccine claim with this court. The government conceded compensability as to part of her claims; however, her condition continued to worsen, and Snyder sought compensation for some contested conditions. Delays ensued while Snyder adduced expert evidence.

Ultimately, the special master ruled against Snyder on May 6, 2005 on her additional claims. However, unbeknownst to all, Snyder had just died, on April 28, 2005. After a procedural challenge was resolved, Zatuchni, as personal representative of the estate, was substituted as a party, and appealed to the Court of Federal Claims.

On February 9, 2006, the Court of Federal Claims reversed the special master, remanding to the special master for determination of the amount of compensation to be awarded, and whether

Snyder's death was vaccine related. In May of 2006, the special master issued a decision, finding that the death was vaccine related. The special master also found that Snyder would have been entitled to compensation in the amount of $554,323.90 for her vaccine-related injuries during her lifetime, including actual expenses incurred, pain and suffering, and lost income between the time of the vaccination and her death. The special master concluded that as a matter of law, however, such compensation could not be paid to her estate because her vaccine-related injury claims did not survive her death. Accordingly, the special master awarded appellant $250,000.

On appeal, the Court of Federal Claims reversed the special master's determination as to the claim for pre-death vaccine-related injury compensation. *Zatuchni v. HHS*, 73 Fed.Cl. 451, 459 (2006). It concluded that Snyder's injury claims did not abate upon her death, and accordingly awarded her estate $804,323.90, consisting of the $250,000 death benefit and compensation for injuries during her lifetime in the amount of $554,323.90. The government appealed to the Federal Circuit, taking the position, as it does here, that the death of a claimant extinguishes his injury claim.

As here, the government primarily relied on the language of § 300aa-11(b)(1)(a), defining who may bring a petition, to support its position. The Court squarely rejected this argument:

> Primary reliance is placed on § 300aa-11(b)(1)(A), which describes who "may file a petition for compensation under the Program," and § 300aa-11(b)(2), which provides that "[o]nly one petition may be filed with respect to each administration of a vaccine" (the "single petition rule"). While we are mindful that "[s]tatutes must be read as a whole," *United States v. Atlantic Research Corp.*, 551 U.S. 128, 127 S.Ct. 2331, 2336, 168 L.Ed.2d 28 (2007) (internal quotation marks omitted), we do not find the government's arguments on these points to be compelling.
>
> Based on its reading of § 300aa-11(b)(1)(A), the government contends that because the right to file a claim after the death of a vaccine-injured person is limited to the "the legal representative of any person who died as the result of the

administration of a vaccine," it is apparent that "a person who dies before the filing of a petition cannot request compensation for a vaccine-related injury." Reasoning from this conclusion, the government argues that vaccine-related injury claims thus do not survive the death of the vaccine-injured person. The government's reading of this provision goes too far.

*Zatuchni*, 516 F. 3d 1312, 1320.

After a lengthy discussion in which it noted that the Act did not preclude survivorship of injury claims, especially in light of the legislative intent behind the Act, the Court declined to accept the government's position, and affirmed the award of both categories of compensation. The Court did, however, specifically decline to address Manny's situation, stating that "we need not decide whether § 300aa-11(b)(1)(A) would permit the estate of a person who suffered vaccine-related injuries but died of a non-vaccine-related cause to file a petition for vaccine-related injury compensation, and thus express no view on that point." *Id.*

In his dissenting opinion, which concurred in the result, in which he expressed his belief that the Act did not provide for survivorship on statutory grounds, Judge Dyk did make perhaps the best arguments as to why Manny's claim is clearly compensable. First, to accept the government's reading of the statute as far as standing would lead to an anomalous and absurd result:

> . . . a petitioner's claim for vaccine-related injury would survive only if the petitioner died from vaccine-related causes, since the language refers only to "the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table." If the petitioner died of unrelated causes, section 300aa-11(b)(1)(A) could not be read to provide any standing for the petitioner's personal representative, and the vaccine-related injury claim would apparently abate. This would leave such a petitioner's estate no basis for any compensation at all, even though the petitioner would have suffered vaccine-related injuries and associated costs during his or her life. There is no basis in the policy of the Vaccine Act to distinguish, in terms of the availability of compensation for pre-death injury, between a person who suffers a vaccine-related injury and subsequently dies as a result of the vaccination, and a person who suffers the same

vaccine-related injury but dies of unrelated causes. Congress cannot possibly have intended such a result, and nothing in the legislative history suggests that Congress intended this result.

*Id.*, 516 F. 3d 1312, 1326-7.

Because nothing in the Act expressly addressed survivorship, Judge Dyk believed that the question of survivorship was more properly determined under federal common law:

> The issue of survivorship is among the background legal principles for which judicial gap-filling is appropriate. The Supreme Court has impliedly held, and eight circuits have explicitly held, that federal common law determines survivorship where the statute is silent as to the issue. Commentators agree. "In some statutes creating a federal right of action Congress provides *explicitly* that the action will survive the death of a party. *In the absence of a provision of this kind the court must look to federal common law.*" 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1954 & n. 12 (3d ed.2007) (footnotes omitted and emphases added). Ample authority from the Supreme Court and eight circuits supports this well-established proposition.

*Id.* (Footnotes omitted).

Judge Dyk then went on to discuss the analysis that he would apply. First, he noted that turning to state law was not the correct approach, given the need for uniformity in rules governing a federal program. However, he did feel that state law was still valuable for guidance, ultimately concluding that the common law mandated an interpretation of the Act that favored survivorship of all claims:

> Although it is not appropriate to adopt the differing rules of individual states, it is appropriate to follow the approach adopted by the vast majority of states. Nearly every state now provides for survivorship of personal injury claims by statute, rejecting the common law rule that personal injury claims do not survive death. See 3 Speiser & Rooks, supra, app. A; see also Keeton et al., supra, § 126 ("[V]irtually every state today has some form of survival statute, the exact provisions of which vary but the gist of which is to permit a personal injury action to continue after the death of either the plaintiff or defendant." (footnote omitted)).

In a closely related context, the Supreme Court has explained that the sweeping rejection by the states of a common law doctrine argues strongly that the common law doctrine should also be rejected as a matter of federal common law. At common law, there was no cause of action for wrongful death. *See Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 380, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). In *Moragne*, the Supreme Court recognized, as a matter of federal common law, a cause of action for wrongful death in federal admiralty jurisdiction. *Id.* at 409, 90 S.Ct. 1772. The Court held that despite the common law refusal to recognize such a claim, "the work of the legislatures has made the allowance of recovery for wrongful death the general rule of American law, and its denial the exception." *Id*. at 393, 90 S.Ct. 1772. Based in large part on the widespread enactment of state statutes creating a cause of action for wrongful death, creation of a similar federal common law action was appropriate. *Id*. at 390-92, 90 S.Ct. 1772. It is appropriate to follow a similar approach with respect to survivorship of injury claims, since the states by statute have almost uniformly rejected the common law rule that personal injury claims do not survive death. Indeed, it is particularly appropriate to follow the approach of *Moragne* because the common law doctrines rejecting survivorship and wrongful death actions, while distinct, are related both in historical origin and practical consequence. See *Malone, supra*, at 1044.

A rule in favor of survival is also consistent with the objectives of the Vaccine Act with respect to both compensation of injured individuals and protection of vaccine manufacturers. The Vaccine Act includes an opt-out provision which requires that individuals harmed by a vaccine submit a claim under the vaccine program, but allows a claimant to reject the program award and instead bring a private action under state law against a vaccine manufacturer or administrator. 42 U.S.C. § 300aa-11(a)(2)(A). A rule in favor of survivorship of vaccine-related injury claims would preserve the Vaccine Act as an effective substitute for the state tort system. As noted earlier, in all or nearly all states, the state tort system that Congress sought to replace with the vaccine compensation program, for claims of vaccine-related injuries and death, provides for survival of personal actions. A rule in favor of survivorship would harmonize the federal scheme with the state alternative.

*Id.,* 516 F. 3d 1312, 1330-31.

As mentioned previously, it is true that Special Master Moran did, in *Sigal v. HHS*, 2008 WL 2465790 (Fed. Cl. 2008), in a case with facts close to the instant, agree with the government's position that the statute must be literally and narrowly construed, thereby rejecting a claim similar

to Manny's. .

The *Sigal* court held that the petitioner, who was in the same procedural posture as Petitioner here, failed to meet any of the categories of petitioner enumerated by the language of § 11(b)(1)(A); and that Sigal's reliance on Judge Dyk's opinion and policy considerations was, in effect, an attempt to create a fourth category of petitioner. Essentially, *Sigal* adopts the government's position that only living, injured vaccine recipients can file injury claims.

However, *Sigal* was decided right after *Zatuchni*, and cases discussing the issue since that time have uniformly favored the more expansive, less technical approach, although, again, no case has squarely addressed this specific issue. *Sanders v. HHS*, 2009 WL 1759452 (Fed. Cl. 2009), decided the following year, provides perhaps the most comprehensive and persuasive analysis of the meaning and effect of the *Zatuchni* cases.

In *Sanders*, the claimant died of unrelated causes while his petition was pending. The case was stayed pending the outcome of *Zatuchni*, and was ultimately decided in the claimants' favor, agains rejecting the same arguments propounded by the government here. What makes *Sanders* so informative is the time and effort Special Master Vowell expended in analyzing the intent of the Act and the issue of survivorship.

In its analysis, the court reviewed the pre-*Zatuchni* cases and noted the different approaches taken by different Special Masters in analyzing the issue. Some adopted the "fourth class of petitioner" argument, rejecting survivorship outright; others believed that Congress specifically intended to not allow survivorship of claims. Judges of the Court of Claims also differed in their approaches to the issue; Judge Horn, in *Buxkemper v. HHS*, 32 Fed. Cl. 213 (1994), found that the

death of a petitioner extinguished an injury claim, while Judge Tidwell, nine months later, in *Andrews v. HHS*, 33 Fed. Cl. 767 (1995), reached the opposite conclusion in a minor's case. Judge Tidwell also addressed the purposes behind the Vaccine Act, concluding therefrom that Congress intended survival of the vaccine injury cause of action created by the Act. Although under common law, personal injury actions did not survive the death of either party, Judge Tidwell noted that, by the time the Vaccine Act was enacted, many states permitted a personal injury cause of action to be filed or continued by a plaintiff's estate. He concluded that, as the Vaccine Act "was designed to replace the state law civil tort system with a simple, fair and expeditious means for compensating vaccine injured persons," Congress must have intended that the cause of action for a vaccine injury would survive the death of the vaccinee. 33 Fed. Cl. at 771-72.

After discussing the pre-*Zatuchni* line of cases, Special Master Vowell turned to the task at hand, noting that "[w]ere I analyzing the issues presented in this case prior to the decision in Zatuchni IV, resolution of the issues would have been much easier." *Sanders*, *9. This was not the case, however:

> Although *Zatuchni IV* (including Judge Dyk's dissenting and concurring opinion) does not directly reach the issue presented in this case, that opinion signals a different interpretation of the Vaccine Act's silence regarding survival of a vaccine injury cause of action. The instant motion appears to be the first case to require an interpretation of § 300aa-1 1(b)(1)(A) of the Act after *Zatuchni IV*, and I must write, not on the slate my colleagues used, but one altered by *Zatuchni IV's* more expansive interpretation of the Vaccine Act's compensation provisions and its ruling that at least some injury claims survive the injured person's death.

> *Id.*

The court noted that *Zatuchni* implicitly answered the general question of Congressional

intent regarding survivorship in the face of the statute's silence.  While *Zatuchni* did not expressly address Sanders' situation, this court found that the law mandated finding in his favor.

Special Master Vowell summarized the core issue thusly:

> *Zatuchni IV* thus addressed both standing to maintain a properly filed petition and whether an estate may be compensated for a **vaccine**-related injury. The factor that distinguishes *Zatuchni IV* from the instant case is that Ms. Snyder's death was **vaccine**-related and Mr. Sanders' death was not. Does this distinction make a difference in either standing to maintain a claim or the survival of the claim itself?
>
> At least one argument can be made that it does, because the statute permits executors to file claims for **vaccine**-related deaths, making an executor an "authorized filer." Ms. Snyder's injury claim could have been amended to include the death claim, for which the administrator of her estate was a proper filer. In contrast, Mr. Sanders' executor has conceded that no death claim can be made because his death was not **vaccine**-related.
>
> I conclude that this distinction does not make a difference in the survival of an injury claim. *Zatuchni IV* remedied the illogical consequence of a validly filed **vaccine**-injury claim being extinguished by an equally valid **vaccine** death claim. In so doing, the court necessarily determined that **vaccine** injury claims survive the death of the injured person.  Relying on *Zatuchni IV* and on Judge Tidwell's decision in *Andrews* regarding standing of an estate to maintain a claim that was properly filed, I also must conclude that once a petition is properly filed, the petition remains properly filed, regardless of the status of the vaccinee. Therefore, I conclude that Mr. Sanders' injury claim survived his death and his properly appointed executor may maintain it.

*Id.,* *12.

Finally, earlier this year, Special Master Golkiewicz, in *Griglock v. HHS*, 2011 WL 839738 (Fed. Cl. 2011), while denying part of a claim on limitations grounds, again discussed *Zatuchni*, citing Judge Dyk's analysis with favor, rejecting the government's narrow reading of the statute, and noted that he "reads *Zatuchni* as opening the door for compensation to be awarded for both injury and death." *Id.*

Under *Zatuchni* and the cases following it, the intent of the Act is clear – to compensate victims. The fact that Manny died does not mean he did not suffer or incur expenses while living. To hold now, especially in light of *Zatuchni*, that Congress intended Manny to have no recovery, purely because he had the nerve to die too quickly (and even thought the petition was filed within the prescribed statute of limitations), is illogical and contrary to the purpose of the Act. As prior courts have noted, the government's argument in this regard simply "goes too far."

**IV. Petitioner is entitled to Fees:**

Although Petitioner believes this issue is premature, since this case should not be dismissed, Respondent did raise this issue, so it must be briefly addressed. To recover fees under the Act, a party need not present a successful claim.

42 U.S.C. § 300aa-15 provides for the recovery of attorneys' fees and costs. Under the statute, even in the absence of a recovery, the special master or court may award fees and costs incurred in any proceeding on the petition so long as it is determined that the petition was brought in good faith and there was a reasonable basis for the claim set forth therein. As noted by the Supreme Court, "Attorney's fees are provided, not only for successful cases, but even for unsuccessful claims that are not frivolous." *Bruesewitz v. Wyeth*, 131 S.Ct. 1068, 179 L.Ed.2d 1, 79 USLW 4067 (2011).

## CONCLUSION

For the reasons set forth, Respondent's Motion to Dismiss must be DENIED.

Figueroa v. HHS
10-vv-750
Page 13

Respectfully submitted,

**FEILER & LEACH, P.L.**
901 Ponce de Leon Blvd
Penthouse Suite
Coral Gables, Florida 33134
Telephone: (305) 441-8818
Facsimile: (305) 441-8081
Mbf@flmlegal.com


By: /s/ Michael B. Feiler
   Michael B. Feiler
   Florida Bar No. 098477


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 2, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

BY: /s/ Michael B. Feiler

**SERVICE LIST**
Melonie J. McCall, Esq.
Torts Branch, Civil Division
U.S. Dept. Of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
melonie.mccall@usdoj.gov